FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 13, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOSE G.,

            Plaintiff,

            v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY[1],

            Defendant.

No. 1:18-CV-03132-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF
Nos. 13, 20. Attorney D. James Tree represents Jose G. (Plaintiff); Special
Assistant United States Attorney Leisa A. Wolf represents the Commissioner of
Social Security (Defendant). The parties have consented to proceed before a
magistrate judge. ECF No. 7. After reviewing the administrative record and the
briefs filed by the parties, the Court **DENIES** Plaintiff's Motion for Summary
Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

---

[1]Andrew M. Saul is now the Commissioner of the Social Security
Administration. Accordingly, the Court substitutes Andrew M. Saul as the
Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P.
25(d).

ORDER GRANTING DEFENDANT'S MOTION - 1

# JURISDICTION

Plaintiff filed an application for Disability Insurance Benefits (DIB) on December 27, 2010, Tr. 89, alleging disability since March 15, 2002, Tr. 196, due to three broken vertebra in his neck, arthritis, displaced discs in his back, damaged tendons on his right arm, depression, anxiety, and panic disorder, Tr. 231. The application was denied initially and upon reconsideration. Tr. 115-17, 124-25. Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on January 14, 2013 and heard testimony from Plaintiff, Plaintiff's wife, and vocational expert Trevor Duncan. Tr. 49-88. The ALJ issued an unfavorable decision on March 29, 2013. Tr. 32-44. The Appeals Council denied review on April 24, 2015. Tr. 1-3. Plaintiff requested judicial review of the ALJ decision on June 29, 2015. Tr. 582-84. This Court remanded the case to the Commissioner for additional proceedings on May 18, 2016. Tr. 551-66. The Appeals Counsel remanded the case to the ALJ for additional proceedings. Tr. 571-75. The ALJ held remand hearings on February 7, 2017 and August 24, 2017 and heard testimony from Plaintiff, medical expert Don Clark, M.D., and psychological expert Michael Lace, Psy.D. Tr. 460-521. The ALJ issued an unfavorable decision on May 23, 2018. Tr. 427-44. The Appeals Council did not assume jurisdiction over the case within the period prescribed by 20 C.F.R. § 404.984(a). Therefore, the ALJ's May 23, 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 24, 2018. ECF Nos. 1, 4.

# STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 37 years old at the date of application. Tr. 196. Plaintiff completed his education in Mexico, and the highest grade he completed was the

sixth. Tr. 232. His reported work history includes agricultural laborer. Tr. 232, 238. When applying for benefits Plaintiff reported that he stopped working on March 15, 2002 because of his conditions. Tr. 231.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to

disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 404.1520(a). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, he is found "disabled". 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 23, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from March 15, 2002 through his date last insured, September 30, 2007.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from March 15, 2002 through September 30, 2007. Tr. 430.

At step two, the ALJ determined that Plaintiff had the following severe impairments through the date last insured: lumbar, left shoulder, and cervical sprains in 1999; degenerative disc disease; and various mental disorders. Tr. 430.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 430.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> [H]e could lift and carry 20 pounds occasionally, lift and carry 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. He could occasionally climb ramps and stairs. He could never climb ladders, ropes or scaffolds. Reaching was unlimited with the right upper extremity but limited to frequent with the left upper extremity. He

could frequently stoop, kneel, crouch, and crawl. He needed to avoid working at unprotected heights. He could perform work that was limited to simple tasks with simple work-related decisions and only occasional and superficial interaction with the public.

Tr. 432. The ALJ identified Plaintiff's past relevant work as fruit farm worker and found that he could not perform this past relevant work. Tr. 442.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, hand packager, and mail clerk. Tr. 444. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from March 15, 2002 through the date last insured, September 30, 2007. Tr. 444.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh Plaintiff's symptom statements, (2) failing to properly weigh the medical opinions in the record, (3) failing to properly weigh the other opinion evidence in the record, and (4) failing to make a proper step five determination.[2]

## DISCUSSION

### 1. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 13 at 3-9.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the

_____

[2]Plaintiff combined reasons two and three into a single issue, but the Court has separated them out for clarity.

ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 433. Specifically, the ALJ found that (1) the medical evidence did not substantiate Plaintiff's allegations, Tr. 433, 436, (2) Plaintiff did not receive the extent of treatment one would expect of a disabled individual, Tr. 436, (3) Plaintiff demonstrated exaggerated or inconsistent information suggesting the information he provided may not be reliable, Tr. 436, and (4) Plaintiff's reported activities were not supportive of total disability, Tr. 437.

### A. Medical Evidence

The ALJ's first reason for rejecting Plaintiff's symptom statements, that they were not supported by the medical evidence, is specific, clear and convincing.

Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the only reason for rejecting a claimant's symptom statements. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that "[d]espite his allegations of debilitating physical impairments, the examinations found only minimal findings, and within normal limits findings on examinations." Tr. 436 *citing* Tr. 285-86 (June 16, 2004 examination by Dr. Whitney); Tr. 294-95 (October 9, 2002 evaluation); Tr. 297-98 (November 21, 2005 examination); Tr. 304 (December 7, 2005 mental status exam

from Frederick Montgomery, M.D.); Tr. 311-12 (December 7, 2005 examination by Joseph McFarland, M.D.); Tr. 321 (April 3, 2006 examination by Ronald Early, Ph.D., M.D.); and Tr. 394-99 (July 6, 2004 examination by Frederick Montgomery, M.D.). The ALJ then found that while Plaintiff reported that his ongoing pain prevented him from working, the medical evidence demonstrated that Plaintiff did not have any significant functional limitations stemming from pain. Tr. 436 *citing* Tr. 286, 295, 312 (full range of motion in the upper and lower extremities); Tr. 285, 294, 297 (normal deep tendon reflexes, muscle tone, bulk, and strength of the upper extremities); Tr. 285, 311 (able to walk on heels and toes); and Tr. 311 (able to bear weight equally). Likewise, the ALJ found that Plaintiff's reported mental health symptoms were not supported in the medical records. Tr. 437 *citing* Tr. 304, 398 (normal effect with no evidence of depression or anxiety); Tr. 304 ("excellent eye contact"); Tr. 304, 398 ("no disorganization of thought processes"); Tr. 397 (normal thought content); Tr. 304, 398 (well oriented and intact memory); Tr. 321 (no difficulties with basic cognitive functioning); and Tr. 278 (depression considered resolved).

Here, the ALJ set forth specific examples in the evidence that were inconsistent with the severity of symptoms Plaintiff reported. Therefore, the ALJ's determination is supported by substantial evidence and meets the specific, clear and convincing standard.

## B. Lack of Treatment

The ALJ's second reason for rejecting Plaintiff's symptom statements, that he did not receive the treatment one would expect if he were disabled, is specific, clear and convincing.

Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment casts doubt on a claimant's subjective complaints. 20 C.F.R. § 404.1530; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's

decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication).

Here, the ALJ observed that despite Plaintiff's alleged severity of symptoms, the record reflects gaps in treatment and only returning to providers for medication refills with no specific complaints. Tr. 436. The medical evidence demonstrates that the ALJ's finding is supported by substantial evidence. When he was evaluated by his treating provider during the relevant period, he reported minimal issues with the impairments he alleges are the cause of his inability to work. Tr. 335 (January 21, 2011 visit for a sore throat and medication refill); Tr. 348 (January 11, 2006 visit for urination difficulties); Tr. 350 (January 20, 2006 visit for follow up of urination difficulties); Tr. 352 (March 27, 2006 appointment for a "health maintenance examination"); Tr. 354 (December 1, 2006 visit for a medication refill); Tr. 355 (March 18, 2008 visit to obtain disabled status for the county assessor and parking permit); Tr. 356 (September 24, 2008 visit for medication check).

Plaintiff argues that the ALJ failed to consider the reasons for minimal treatment, such as that his improvement had plateaued so there was no reason for continuing treatment in excess of medication management. ECF No. 13 at 4-5. Plaintiff cites his testimony that the orthopedic surgeon said he could not perform surgery because the tendon was too close to his heart, Tr. 482-83, and his report that there is nothing they can do for him, Tr. 67. ECF No. 13 at 5. However, Plaintiff's report that there was nothing to be done for him may support the infrequency of the appointments, but it does not support the lack of complaints he made at the appointments. Therefore, the ALJ's reason is supported by substantial evidence and is specific, clear and convincing.

The ALJ also found that Plaintiff's reported mental health symptoms were inconsistent with the lack of mental health treatment sought. Tr. 436. The Ninth Circuit has found it a questionable practice to reject a claimant's reported mental

health symptoms based on a failure to seek treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, because the ALJ's observation of the lack of physical treatment is supported by the record, any error stemming from this reason would be considered harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### C.    Exaggerated or Inconsistent Information

The ALJ's third reason for rejecting Plaintiff's symptom statements, that he had exaggerated or provided inconsistent information, is specific, clear and convincing.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ noted that "providers specifically observed extreme pain behavior," and that Plaintiff "described various pains in an unusual manner." Tr. 436. The ALJ found that "[a]lthough exaggerated or inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, it suggests the information he provided may not be entirely reliable, which undermines the overall reliability of his allegations in this application and appeal." *Id*.

The ALJ's finding is supported by substantial evidence. In June of 2004, David Whitney, M.D. made the objective finding of "Extreme pain behavior with extreme inconsistency throughout all parts of the examination." Tr. 287. In April of 2006, Ronald G. Early, Ph.D., M.D. reviewed medical records and observed that "examiners have described him as having unusual pain behaviors and bizarre manner of describing his pain." Tr. 321. Dr. Early stated that "it appears that some of [Plaintiff]'s bizarre complaints are basically a result of poor language skills, lack of vocabulary and primitive knowledge and understanding of the

human body." *Id*.  Despite this explanation by Dr. Early, the ALJ is accurate that this suggests his statements are not entirely reliable.  Therefore, this reason meets the specific, clear and convincing standard.

### D.    Reported Activities

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that he reported activities that were not supportive of disability, is specific, clear and convincing.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ found that Plaintiff attending his sons' sporting events, shopping, and visiting family in Seattle, Sunnyside, and Pasco would require extensive driving that was inconsistent with Plaintiff's alleged severity because Dr. Clark testified that "driving objectively requires reaching and handling, use of foot controls, the ability to maintain alertness and concentration over long periods, good coordination steering, foot, and speedometer coordination." Tr. 437.  Here, the ALJ has made specific findings regarding how Plaintiff's driving demonstrated he could engage in activities that were inconsistent with the level of severity alleged. This meets the specific, clear and convincing standard.

The ALJ also found that Plaintiff walking his dog, walking to the park, going to visit friends, and watching soccer was inconsistent with his reported

symptoms. Tr. 437. However, she did not state how this was inconsistent with Plaintiff's activities or how these demonstrated an ability to perform activities transferable to a work setting. Therefore, these examples did not meet the specific, clear and convincing standard.

The ALJ also found that Plaintiff reported no problems with personal care "due to mental health symptoms" in January pf 2011, but reported problems with self-care in June and September of 2011. Tr. 437. This inconsistency is not supported by substantial evidence. In January of 2011, Plaintiff stated "I need help putting pants, shoes and socks on," and he needed his wife to help him care for his hair. Tr. 246. In June of 2011, he stated "I am limited in my ability to self groom (shower, put on clothing). I need help doing so or it takes me longer to do so." Tr. 257. In September of 2011, he stated "I am limited in my ability to self groom, shower, put on clothes. I need help doing so on [sic] it takes me longer to do so." Tr. 266. There is no inconsistency between the statement in January of 2011, June of 2011, and September of 2011 to support the ALJ's finding. Therefore, this fails to meet the specific, clear and convincing standard.

The ALJ's finding that Plaintiff's driving distances demonstrated abilities in excess of his alleged symptoms meets the specific, clear and convincing standard. While the ALJ's other reasons failed to meet the heightened standard, any error would be considered harmless. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

## 2.    Medical Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Andrew D. Whitmont, Ph.D, Ronald G. Early, Ph.D., M.D., Don Clark, M.D., Michael A. Lace, Psy.D., Leslie Postovoit, Ph.D., Frederick A. Montgomery, M.D., Joseph R. McFarland, M.D., David S Whitney, M.D., CeCilia Cooper, Ph.D., and Flint Orr, M.D. ECF No. 13 at 9-20.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**A.    Andrew D. Whitmont, Ph.D.**

On February 2, 2004, Dr. Whitmont completed a psychological evaluation of Plaintiff. Tr. 278. He diagnosed Plaintiff with the following impairments: pain disorder associated with psychological factors and a general medical condition; major depression, single episode, resolved; and panic disorder with agoraphobia, resolved. Tr. 278. He stated Plaintiff's depression and anxiety were resolved and the focus had been on pain management. *Id*. He stated that Plaintiff felt he had gained an ability to live with the pain and closed the file, stating "He should be sent to a closing IME or pensioned because his Category III pain disorder is

permanent and prevents him from being able to [return to work]." *Id*.

The ALJ assigned this opinion "limited weight" because it was a generic statement, it gave no foundation for the statement, and it did not give a function-by-function analysis. Tr. 440. An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Likewise, an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition). Therefore, the ALJ's reasons meet the specific and legitimate standard.

On January 24, 2012, Dr. Whitmont completed a Mental Medical Source Statement which included four severe limitations, five marked limitations, and two moderate limitations. Tr. 406-09. On July 20, 2016, Dr. Whitmont completed a second Mental Medical Source Statement, which included five severe limitations, seven marked limitations, and two moderate limitations. He further stated that Plaintiff would likely be off-task during a 40-hour work schedule over thirty percent of the time and would likely be absent four or more days per month. Tr. 825-27.

The ALJ gave these opinions very limited weight for four reasons: (1) because they were provided years after the date last insured; (2) because there was no foundation for the marked and severe limitations; (3) because Dr. Whitmont based his findings on the diagnoses and the determination of the Proposed Decision and Order of the Board of Industrial Insurance Appeals for the State of Washington (hereinafter the "L&I Decision") that the ALJ rejected; and (4) because the opinions contrasted sharply with the other evidence in the record. Tr. 440-41.

The ALJ's first reason meets the required specific and legitimate reason. The Ninth Circuit has found that "reports containing observations made after the period for disability are relevant to assess the claimant's disability," and "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). However, the ALJ's decision states that the opinions were rejected "[b]ecause they were provided years after the date last insured, and are therefore less relevant to the claimant's condition and functioning through September 30, 2007." Tr. 440. These two opinions were not offered retrospectively, but addressed Plaintiff's functional capacity as of January of 2012 and July of 2016. Tr. 408 ("At the preset time he continues. . ."); Tr. 825-27 (no statement that the opinion is retroactive or applicable prior to September 30, 2007). Therefore, this meets the specific and legitimate standard.

The remaining reasons provided by the ALJ lack specificity, and do not meet the specific and legitimate standard. The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. However, since the ALJ provided at least one valid reason, any resulting error would be harmless. *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

**B.     Ronald G. Early, Ph.D., M.D.**

On April 3, 2006, Dr. Early reviewed multiple medical records and completed a psychological evaluation. Tr. 317-24. He diagnosed Plaintiff with major depressive disorder, pain disorder associated with psychological factors, and anxiety disorder. Tr. 323. He opined that Plaintiff had a "permanent partial mental health impairment equal to at least category 4 of the WAC Guidelines," vocational services were not indicated, Plaintiff was "totally and permanently disabled as a

result of combined physical injury, mental health diagnoses and psychosocial facts," and additional mental health treatment would not result in any meaningful improvement.  Tr. 324.

The ALJ gave the opinion limited weight because Dr. Early's opinion was inconsistent with Plaintiff's normal limits performance on the mental status examination, he misstated Plaintiff's mental health treatment history, and he based a portion of his opinion on Plaintiff's education and language which are not a medical basis for mental limitations.  Tr. 440.[3]

The ALJ's first and second reasons meet the specific and legitimate standard.  An ALJ may cite internal inconsistencies in evaluating a physician's report.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The ALJ pointed out that the mental status examination limits were normal, Tr. 320-21, and that Dr. Early stated Plaintiff had a seven-year history of mental health problems with extensive treatment and medications, Tr. 324.  The ALJ found the mental status examination did not support the opined severity of limitations, and that Plaintiff's mental health treatment history was not as extensive as Dr. Early stated.  These findings are supported by substantial evidence and meet the specific and legitimate standard.

The ALJ's third reason for rejecting the opinion, that Dr. Early relied on Plaintiff's education and English skills, is specific and legitimate.  A claimant's impairments "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory

---

[3]The ALJ stated "which are medical basis for mental limitations."  Tr. 440. However, reading the paragraph in its entirety, the ALJ intended the sentence to read "which are [not] medical basis for mental limitations."  *Id*.  This was clearly a typographical or scrivener's error as the body of the ALJ's decision specifically holds that the opinion was given limited weight.

diagnostic techniques." 20 C.F.R. § 404.1508. A claimant's residual functional capacity considers his impairments and resulting symptoms. 20 C.F.R. § 404.1545(a). Therefore, the ALJ's determination rejecting the opinion because it was partially based on Plaintiff's lack of education and grasp of the English language is specific and legitimate.

### C. Don Clark, M.D. and Michael A. Lace, Psy.D.

Dr. Clark testified at the February 7, 2017 hearing that Plaintiff did not meet or equal a listing. Tr. 476. He stated that he did not see evidence that would support a finding that Plaintiff was limited to sedentary work or less based on a physical impairment. *Id.* Dr. Lace testified at the August 24, 2017 hearing that Plaintiff's mental health impairments did not meet or equal a listing. Tr. 495. He provided an opinion regarding the "B-Criteria" of the 12.00 listings. Tr. 496-97. The ALJ gave great weight to the opinions of Dr. Clark and Dr. Lace because they were qualified to render opinions as to the nature and severity of Plaintiff's conditions and were the only medical sources to review the entire record. Tr. 431, 437.

An ALJ is not required to provide an explanation for accepting an opinion but must provide an explanation for rejecting an opinion. S.S.R. 96-8p ("The RFC [Residual Functional Capacity] assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Therefore, this Court will not disturb the ALJ's decision.

### D. Leslie Postovoit, Ph.D.

On November 21, 2011, Dr. Postovoit reviewed the medical record and provided a statement that from March 15, 2002 through March 31, 2006 Plaintiff was moderately limited in the ability to understand and remember very short and simple instructions and was markedly limited in the ability to understand and remember detailed instructions. Tr. 107. In the narrative sections, she stated that

Plaintiff's work history was always with simple labor, he had a sixth grade education and was very limited in English skills, and had a concrete learning style. Tr. 107.  She also stated that Plaintiff was markedly limited in the abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 108.  In the narrative section, she stated that the medical records indicated Plaintiff was very somatically-preoccupied with perceived symptoms not verified by multiple medical examinations and that somatic concerns would preclude the ability to focus on work-related tasks reliably.  *Id.*  She also stated that Plaintiff was moderately limited in the ability to interact appropriately with the general public.  *Id.*  In the narrative section, she said Plaintiff had a concrete learning style and very limited English and "[w]ould not manage job [with] much need for public interaction." Tr. 109.  She stated that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. Tr. 109.  In the narrative section, she stated Plaintiff would require work that would be very predictable and with very steady production demands, which did not require much independent decision making on his part. Tr. 109.  She added that Plaintiff was seen with a diagnosis of major depressive disorder, conversion disorder, and pain disorder for the time period addressed with somatic preoccupation being too severe for him to return to work activities. Tr. 109.

She then completed a second mental residual functional capacity assessment from April 1, 2006 to November 21, 2011. Tr. 110-11.  She stated that Plaintiff was not significantly limited in the ability to understand and remember very short and simple instructions. Tr. 110.  She maintained that Plaintiff was markedly limited in

the ability to understand and remember detailed instructions and stated that Plaintiff's limited education and English abilities precluded him from working beyond simple, repetitive tasks. *Id*. She then stated Plaintiff was markedly limited in carrying out detailed instructions and moderately limited in the abilities to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. In the narrative section, she stated that Plaintiff "would be too slow to tackle new complex tasks, but can manage [simple, repetitive tasks] and some hands-on complex tasks that he's been able to learn slowly, at this pace (such as reading well enough to pass driving test and can read information re: store sales)." *Id*. She then stated that Plaintiff was moderately limited in the ability to interact appropriately with the general public. *Id*. In the narrative section, she stated that Plaintiff "prefers family company but is out in the world often [without] anxiety. He would be poorly suited for work beyond intermittent and casual contact [with] the public due to his concrete thinking and limited English skills." Tr. 111. She stated that Plaintiff was moderately limited in the abilities to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. *Id*. In the narrative section, she stated that Plaintiff "would need work that was predictable in task expectation and work flow, plus that didn't require him to make many independent decisions." *Id*.

The ALJ gave the determinations "partial/some weight." Tr. 439. Specifically, the ALJ gave no weight to the opinion prior to April 1, 2006 because "it was based on the L&I decision (Exhibit 2E), which is not binding, and I gave it little to no weight. There was no basis for such limitations per the medical expert, and was based heavily on the claimant's 'somatic concerns and preoccupations.'" Tr. 439. The ALJ then concurred with the April 1, 2006 opinion "because it is the most consistent with the medical expert testimony and the evidence through the

date last insured." *Id.* The ALJ may reject the opinion of a non-examining physician by reference to specific evidence in the medical record. *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir.); *Andrews*, 53 F.3d at 1041. Therefore, the ALJ provided a legally sufficient reason to reject the first opinion. The ALJ was not required to provide a reason for accepting the second opinion. *See* S.S.R. 96-8p.

### E.    Frederick A. Montgomery, M.D.

On July 6, 2004, Dr. Montgomery completed a Psychiatric Independent Medical Examination. Tr. 394-99. He stated that "[i]t would be doubtful that any of the psychiatric barriers that would reduce [Plaintiff]'s ability to work could be reduced by any type of treatment as he fully believes he is permanently disabled and can never work again which is being strongly reinforced by his receiving financial support." Tr. 399.

On December 7, 2005, Dr. Montgomery completed a second Psychiatric Independent Medical Examination. Tr. 302-06. He stated that Plaintiff's "symptoms are in excess of a normal response to this type of injury and [Plaintiff] believes that he is unable to work and is affected by the variety of symptoms without effective treatment." Tr. 305. He also states that "[t]here is no reason why [Plaintiff] cannot return to work." Tr. 306.

The ALJ gave partial/some weight to these opinions, stating "I concur, as his conclusion is consistent with medical evidence of record. . . and as determined by medical experts at the hearing, and the State agency physicians." Tr. 439-40. Plaintiff argues that the ALJ simply summarized Dr. Mongomery's findings without explaining why weight was attributed to his statements. ECF No. 13 at 16. However, the ALJ is not required to provide an explanation for accepting an opinion but must provide an explanation for rejecting an opinion. S.S.R. 96-8p ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Therefore, the Court

will not disturb the ALJ's determination.

**F.     Joseph R. McFarland, M.D.**

On December 7, 2005, Dr. McFarland completed an Orthopedic Independent Medical Examination. Tr. 308-16. He diagnosed a lumbar sprain, cervical sprain, and left shoulder sprain. Tr. 312. He stated that "there are no restrictions preventing the claimant from returning to work. However, the claimant indicated that he has no intent of return[ing] to the work place." Tr. 315. He also stated that [m]y assessment differs from the claimant's in that he feels he is unable to return to work." *Id.*

The ALJ gave this opinion partial/some weight stating he did find that Plaintiff had some physical restriction, but that Dr. McFarland's observation "undermines the claimant's allegations, and possibly motivation, in this application and appeal." Tr. 439-40. Plaintiff argues that the ALJ "irrationally effectively disagreed with his assertion [that Plaintiff] had no 'restrictions,' despite claiming agreement." ECF No. 13 at 16.

The ALJ stated he gave some/partial weight to the opinion. Tr. 439. His explanation as to why he did not accept the opinion that Plaintiff had no restriction was not in detail. However, any error would be considered harmless. Even if this Court were to credit Dr. McFarland's opinion as true, Plaintiff would still not be found disabled. *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

Plaintiff also argued that a "[m]ere suggestion of secondary gain is a weak reason to find a claimant not credible and alone does not support a negative credibility determination." ECF No. 13 at 16 *citing Burrell v. Colvin*, 775 F.3d 113, 1139-40 (9th Cir. 2014). However, the issue being addressed is not Plaintiff's credibility, but the weight assigned to Dr. McFarland's opinion. Therefore, the Court will not disturb the ALJ's determination.

### G.    David S. Whitney, M.D.

On June 16, 2004, Dr. Whitney completed an Orthopedic Independent Medical Examination.  Tr. 280-91.  He made three objective findings: (1) extreme pain behavior with extreme inconsistency throughout all parts of the examination; (2) no objective neurologic deficit noted; and (3) no consistent objective limitation of motion in the cervicodorsal, lumbosacral or upper lower extremities noted.  Tr. 287.  He provided a residual functional capacity opinion, which indicated no limitation in the abilities to sit, walk and stand.  Tr. 291.  He limited Plaintiff's lifting and carrying seldom twenty-one to twenty-five pounds, occasionally eleven to twenty pounds, frequently six to ten pounds, and continuously up to five pounds.  *Id*.  He opined no limitations with repetitive tasks in the upper or lower extremities.  *Id*.  He limited Plaintiff's kneeling, crawling, climbing, and reaching above the shoulder to seldom and bending and squatting to occasionally.  *Id*.

The ALJ found that these limitations were consistent with the medical evidence and generally agreed.  Tr. 439.  However, she found that additional medical evidence obtained since 2004 factored into her residual functional capacity determination.  *Id*.  Plaintiff argued that the ALJ's assertion is unsupported.  ECF No. 13 at 17.  However, the ALJ is not required to provide an explanation for accepting an opinion but must provide an explanation for rejecting an opinion.  S.S.R. 96-8p ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  Therefore, the Court will not disturb the ALJ's determination.

### H.    Cecilia Cooper, Ph.D.

On November 10, 2011, Dr. Cooper completed a Psychological Evaluation of Plaintiff.  Tr. 380-87.  She diagnosed Plaintiff with a pain disorder with both psychological factors and a general medical condition and an adjustment disorder with depressed mood.  Tr. 385.  She provided the following medical source

statements:

> Plaintiff is able to understand, remember and carry out instructions for tasks involving two or three closely related steps. He would have difficulty with more complex instructions. He would do tasks requiring much physical labor, slowly. He would have problems maintaining attention and concentration for extended periods of time because of subjective feelings of pain and because of depression. He would have problems with change because his thinking is concrete. He would do best in situations in which he could practice new behaviors related to changes several times before the changes are implemented. Visual aids and demonstrations would be helpful. Supervisors would do well to not give him a new task to do until he has completed the one he has. Having him repeat instruction in his own words would also be of benefit. [Plaintiff] would usually respond appropriately to normal hazards. He would not require close supervision once he has a comfortable routine to follow. He would respond well to having his efforts to succeed noted.

Tr. 386.

The ALJ gave the opinion very limited weight because her more restrictive conclusions are without support from her own evaluation results, specifically a normal mental status examination. Tr. 441. An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. A discrepancy between a provider's notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

Plaintiff argues that the mental status examination was not normal. ECF No. 13 at 17. Dr. Cooper observed that Plaintiff was "focused on his problems with pain." Tr. 383. She noted that Plaintiff did not smile during the evaluation. *Id.* Dr. Cooper found his ability to engage in abstract reasoning was impaired, his short term and long-term memory was impaired. Tr. 384. Plaintiff's orientation to time and place, ability to maintain attention and concentration, and judgment were not impaired. Tr. 384-85. Dr. Cooper specifically found that Plaintiff's ability to

carry out instructions for tasks involving two or three closely related steps was not impaired. Tr. 385. These findings are inconsistent with Dr. Cooper's opined limitations in the abilities to maintain attention and concentration and learn new tasks. Therefore, the ALJ's reason meets the specific and legitimate standard.

## I. Fling Orr, M.D.

Dr. Orr wrote letters on May 24, 2011 and August 15, 2012 stating the following:

> [Plaintiff] suffered an industrial accident in 1999 while working in the harvesting of pears. The historical records with our electronic medical records contains a transcript of the 2006 proceeding of the Washington Board of Industrial Appeals in which he was granted a pension recognizing his lifelong disability as a result of the injury. I have known him as his primary care physician since 2006. He has continued to need medications for the chronic symptoms from the injury and has not been able to return to work. Therefore, I consider him chronically disabled.

Tr. 410-11.

On July 18, 2016, Dr. Orr completed a Medical Report form stating that Plaintiff would miss an average of four or more days of work per month because "[Plaintiff] reports symptoms with minimal ability. He has maintained his inability as long as I've known him." Tr. 822-24. He also limited Plaintiff to Sedentary work. Tr. 823. He opined that these limitations had existed since at least January 2006. Tr. 824.

Additionally, the record contains an undated Physical Residual Functional Capacity Assessment from Dr. Orr that was submitted in December of 2012. Tr. 412-20. Dr. Orr limited Plaintiff to occasionally lifting and/or carrying ten pounds, frequently lifting and/or carrying ten pounds, standing and/or walking less than two hours, sitting for a total of less than about six hours, and unlimited pushing and/or pulling. Tr. 414. He precluded Plaintiff from climbing ramps/stairs, climbing ladders/rope/scaffolds, balancing, kneeling, and crouching, and limited

him to occasional stooping and crawling. Tr. 415. He stated that Plaintiff had been disabled from before March 7, 2006 when the Board of Industrial Insurance of the State of Washington declared him disabled. *Id.* He limited Plaintiff's reaching in all directions, handling, and fingering due to his shoulder symptoms. Tr. 416.

The ALJ rejected all of these opinions because they were created years after the Plaintiff's date last insured. Tr. 440. Here, the opinions are all retrospective, as they specifically address a time period prior to the September 31, 2007 date last insured. Therefore, the fact that they were penned after the date last insured does not meet the specific and legitimate standard. *See Smith*, 849 F.2d at 1225.

The ALJ rejected Dr. Orr's opinion expressed in the two identical letters because in a phone conversation in October of 2011 with Dr. Postovoit, Dr. Orr admitted he was not familiar with Plaintiff's history overall and only saw Plaintiff for brief medication renewal appointments about twice a year. Tr. 441 *citing* Tr. 388. Dr. Postovoit's statement includes "Dr. Orr could offer nothing re: how the clmt's shoulder and neck pain (which are the medically-verifiable pain areas, not conversion d/o sx) adversely affect the clmt's daily functioning." Tr. 388.[4] An ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. Dr. Postovoit's statements indicate that Dr. Orr's opinions expressed in these letters are inadequately supported by clinical findings. Therefore, this meets the specific and legitimate standard.

The ALJ rejected Dr. Orr's opinion expressed in the July 2016 statement because it was based on Plaintiff's self-reported symptoms, because he provided

_____

[4]Dr. Postovoit states that the contact with Dr. Orr took place on October 4, 2011. Tr. 388. However, Dr. Postovoit's final report and opinion was completed and signed on November 21, 2011. *Id.*

no objective medical evidence to support the opinion, and because he admitted to Dr. Postovoit that he rarely saw Plaintiff and only for brief medication management appointments. Tr. 441-42. These reasons meet the specific and legitimate standard. First, a doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti*, 533 F.3d at 1041. But the ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ found that Dr. Orr's statement that Plaintiff "reports symptoms with minimal ability. He has maintained his inability as long as I've known him" showed that Dr. Orr relied heavily on Plaintiff's symptoms. Tr. 441. This Court has upheld the ALJ's determination that Plaintiff's symptoms statements were unreliable. *See supra*. Therefore, the ALJ's first reason meets the specific and legitimate standard.

The ALJ's second reason, that Dr. Orr provided no objective medical evidence to support the opinion, is also specific and legitimate. An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole. *Bayliss*, 427 F.3d at 1216. As the ALJ points out, Dr. Orr referred to work-ups and evaluations occurring between 1999 and 2006, but he failed to provide or discuss the evidence. Tr. 442.

The ALJ's third reason, that Dr. Orr's opinion is undermined by Dr. Postovoit's summary of the October 4, 2011 phone conversation, is specific and legitimate. As discussed above, Dr. Postovoit reached out to Dr. Orr on October 4, 2011 to address his opinion of Plaintiff's disability. Tr. 388. Dr. Postovoit wrote that Dr. Orr admitted to not being familiar with Plaintiff's history and only saw Plaintiff for brief medical renewal appointments. *Id*. Considering this along with the fact that Dr. Orr consistently relies on the L&I decision in his repeated opinions of disability, which the ALJ rejected, the ALJ's determination giving him less weight is supported by substantial evidence and legally sufficient.

The ALJ rejected the undated opinion, which she referred to as the August 2012 opinion or Exhibit 15F, because it was undermined by Dr. Postovoit's October 4, 2011 phone conversation with Dr. Orr. As addressed above, Dr. Postovoit reached out to Dr. Orr, and Dr. Orr admitted to not being familiar with Plaintiff's history and only saw Plaintiff for brief medical renewal appointments. Tr. 388. Additionally, Dr. Orr limited Plaintiff's hearing and speaking based on Dr. Whitmont's psychological evaluation in January of 2012. Tr. 417. This opinion by Dr. Whitmont reflects Plaintiff's abilities as of January of 2012. Therefore, this does undermine the reliability of Dr. Orr's opinion regarding Plaintiff's limitations prior to the September 31, 2007 date last insured. This meets the specific and legitimate standard.

**3.    Other Opinions**

Plaintiff challenges the ALJ's treatment of the L&I Decision and the testimony of Plaintiff's spouse. ECF No. 13 at 19-20.

**A.    L&I Decision**

The record contains a Proposed Decision and Order of the Board of Industrial Insurance Appeals for the State of Washington, referred to as the L&I decision. Tr. 211-23. This decision found that Plaintiff was temporarily totally disabled from March 3, 2006 through March 6, 2006 and as of March 7, 2006 Plaintiff was permanently totally disabled. Tr. 223.

The ALJ gave this determination little to no weight citing POMS DI 24503.045 and 24503.005. Tr. 438. A determination made by another government agency regarding whether or not a claimant is disabled is not binding on the ALJ. 20 C.F.R. § 404.1504. The referenced POMS provision states the following:

> We consider evidence of decisions by other governmental agencies and nongovernmental entities as evidence from a nonmedical source. We also consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive according to the appropriate category of evidence in DI

24503.005 Categories of Evidence. We are not required to adopt a decision by any other governmental agency or a nongovernmental entity.

POMS DI 24503.045. For claims filed before March 27, 2017, the ALJ is required to explain the consideration given to such decisions. *Id.*

Here, the evidence underlying the L&I decision includes the medical opinions of Dr. Whitmont, Dr. Early, Dr. McFarland, and Dr. Montgomery and the records from Dr. Schneider. Tr. 213-20. The ALJ addressed each of these opinions and the records from Dr. Schneider in her decision. Tr. 433-34, 440. Therefore, the ALJ properly addressed the evidence underlying the L&I decision and properly discussed the weight assigned to the decision itself. This Court will not disturb the ALJ's determination.

## B. Plaintiff's Wife

Plaintiff challenges the weight the ALJ assigned to his wife's testimony. ECF No. 13 at 19-20.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). An ALJ must give "germane" reasons to discount evidence from these "other sources." *Dodrill*, 12 F.3d at 919.

The ALJ assigned little weight to the observations of Plaintiff's wife because they were similar to his own subjective complaints of disabling impairments. Tr. 442. The ALJ may reject the statements of a lay witness because they are similar to the claimant's statements that have been rejected for specific, clear and convincing reasons. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693-94 (9th Cir. 2009). Therefore, the Court will not disturb the ALJ's determination.

**4.     Step Five**

Plaintiff challenges the ALJ's step five determination by asserting that the ALJ erred by relying on the testimony of the vocational expert.  ECF No. 13 at 20-21.  Essentially, Plaintiff argues that the ALJ failed to provide a significant number of jobs based on Plaintiff's counsel's researching the number of jobs using the computer system Job Browser Pro.  *Id*.

The ALJ is entitled to rely on the vocational expert's testimony regarding the number of available jobs in the economy.  In *Bayliss*, the Ninth Circuit recognized that "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a VE."  427 F.3d at 1218 (citing *Johnson*, 60 F.3d at 1435).  Therefore, the Court will not disturb the ALJ's step five determination.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED September 13, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE